

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-25-00187-CR

_____

DEQUAN KING, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 56749-B

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin
Concurring in Part and Dissenting in Part Opinion by Chief Justice Stevens

# MEMORANDUM OPINION

Pursuant to a plea agreement, Dequan King pled guilty to the offense of sexual assault of a child, a second-degree felony. *See* TEX. PENAL CODE ANN. § 22.011(a)(2)(A), (f). The trial court accepted the State's punishment recommendation and granted King deferred adjudication with ten years' community supervision and a $1,000.00 fine. The State later moved to adjudicate King's guilt based on several violations of his community supervision. King pled true to the alleged violations, and the trial court adjudicated King guilty of the charged offense. The trial court sentenced King to seven years' imprisonment and assessed a $1,200.00 fine along with court costs and fees.

King raises three issues on appeal: (1) the trial court erred by including a $1,000.00 fine in its written judgment when that fine was not included in its oral pronouncement of King's sentence,[1] (2) the evidence was insufficient to support the trial court's assessment of an $1,800.00 reimbursement for a court-appointed attorney's fees, and (3) the trial court prematurely assessed a time-payment fee.

We conclude that the assessed fine and the time payment fee must be struck, and we modify the judgment and bill of costs accordingly. As modified, we affirm the trial court's judgment.

---

[1]The third page of the judgment and the bill of costs record a general fine of $1,000.00, and additional fines totaling $200.00. The first page of the judgment indicates the fine was $1,200.00. King argues that whether the fine was $1,000.00 or $1,200.00, it was "improperly assessed."

## I.    Background

On February 26, 2025, a Gregg County grand jury indicted King for sexual assault of a child younger than seventeen years of age on December 8, 2024.

King was arrested on December 17, 2024.  On December 23, 2024, from jail, he applied for appointed counsel.[2]  That same day, the trial court appointed counsel for King.  The trial court's appointment does not indicate whether it was for indigency or the interests of justice.

At a hearing on April 17, 2025, King pled guilty, and the trial court placed him on deferred adjudication community supervision.  The reporter's record of that hearing mentions an April 9, 2025, pre-sentence investigation report (PSI), but it is not in the record.[3]  The record contains a bill of costs dated April 17, 2025.  That bill of costs does not provide an amount for attorney fee reimbursement, but instead states, "This does not include Attorney Fee's, Restitution, Reimbursement and/or any other additional cost that may be applicable."  That bill of costs is included in the record after the State's punishment recommendation and before the admonishment of sex offender registration requirements.  The April 17 trial court order establishing the terms of King's deferred adjudication community supervision states that he would be required to reimburse the cost of court-appointed counsel in an amount to be determined ("$TBD").

Following the April 17 hearing, the record contains an April 23, 2025, request for payment by King's appointed counsel and the trial court's approval of that $1,300.00 request.

---

[2]The request was not signed by King.  It was signed by an employee of Gregg County with a notation that it was a "[j]ail appt" request.  On appeal, King does not assert that the request was made contrary to his wishes.

[3]There is, however, some indication of what is in the PSI based on the testimony at the revocation hearing.

3

Attached to and supporting the $1,300.00 request is an April 16, 2025, letter from King's appointed counsel itemizing his time spent on the case. The record also contains an April 24, 2025, bill of costs, this time including an attorney fee of $1,300.00 corresponding to (1) counsel's billing for thirteen hours from December 23, 2024, through the April 17, 2025, plea hearing and (2) the trial court's April 23 order for payment of $1,300.00 for legal services rendered. That bill of costs is included among the documents appearing before the trial court's signature on the order of deferred adjudication. The trial court signed the order of deferred adjudication community supervision on April 28, 2025. That order includes a $1,200.00 fine and a requirement that King reimburse Gregg County for the $1,300.00 spent on King's appointed counsel. The restitution portion of the order states, "[King] has financial resources that enable [him] to offset in part or in whole the cost of the legal services provided to [him]." The order additionally states, "Therefore, the Court ORDERS [King] to pay $1,300.00 as court costs to the County."

Appointed trial counsel continued to represent King through the revocation hearing on November 3, 2025. At that hearing, trial counsel submitted a payment request for five hours of additional work, and the trial court approved the request for payment in the amount of $500.00. During the hearing, the State offered, and the trial court admitted without objection, a written stipulation by King that he had violated six conditions of his deferred adjudication community supervision. The State alleged in the stipulation that King had failed to obtain employment, used marihuana, failed to complete community work service, failed to pay monthly community supervision fees of $60.00, failed to pay a $100.00 PSI fee, and failed to attend sex offender

4

counselling. Daniel Rubio, a licensed sex offender counselor, testified that King had attended once, but missed all subsequent meetings. Some of the missed meetings Rubio attributed to King having transportation problems. But others Rubio attributed to King just not caring enough to wake up in time to make a 9 a.m. appointment. On cross-examination, Rubio was asked, "[I]n your experience, have you found it somewhat difficult that younger clients, maybe early 20s, that they don't address responsibilities, such as making appointments, things like that as older adults might?" Rubio responded, "From my experience, most of my clients have not had difficulties with this."

Hoping to remain on community supervision, King testified on his own behalf. On cross-examination King was asked about his April 9, 2025, PSI. King acknowledged telling the PSI investigating officer that he had briefly held jobs at a sandwich restaurant ("about three months") and then a cafeteria. King admitted that he was "let go" from the cafeteria job "because it was hard for [him] to follow instructions[.]"

At the conclusion of the revocation hearing, the trial court adjudicated King guilty, and sentenced him to seven years' confinement, but the trial court did not orally pronounce any fine. The judgment adjudicating King's guilt assessed a $1,200.00 fine, an attorney fee reimbursement order of $1,800.00, and a reimbursement fee of $15.00, plus court costs. A bill of costs filed on November 4, 2025, indicates an attorney fee of $1,800.00, a fine of $1,000.00, a time payment fee of $15.00, and various court costs.

## II.     The Fine Must Be Set Aside as it Was Not Orally Pronounced

In his first issue, King asserts that the trial court erred by including a $1,000.00 fine in its written judgment adjudicating guilt when it had not assessed that fine in its oral pronouncement of guilt at King's revocation hearing.

"We review a trial court's directive requiring the payment of a fine . . . for an abuse of discretion." *Teague v. State*, No. 06-24-00165-CR, 2026 WL 1052862, at *16 (Tex. App.—Texarkana Apr. 20, 2026, no pet.) (plurality op.) (not designated for publication) (van Cleef, J., concurring). "A trial judge has neither the statutory authority nor the discretion to orally pronounce one sentence[4] in front of the defendant, but then enter a different written judgment outside the defendant's presence." *Burt v. State*, 445 S.W.3d 752, 757 (Tex. Crim. App. 2014); *see Taylor v. State*, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004) ("A defendant's sentence must be pronounced orally in his presence." (citing TEX. CODE CRIM. PROC. ANN. art. 42.03, § 1(a); *Ex parte Madding*, 70 S.W.3d 131, 135 (Tex. Crim. App. 2002) (orig. proceeding))). "Rather, due process requires that the defendant be given fair notice of all of the terms of his sentence, so that he may object and offer a defense to any terms he believes are inappropriate." *Burt*, 445 S.W.3d at 757. "The appellant then has a 'legitimate expectation' that the punishment he heard at trial match the punishment he actually receives." *Id.* (quoting *Ex parte Madding*, 70 S.W.3d at 136).

"When there is a conflict between the oral pronouncement of sentence and the sentence in the written judgment, the oral pronouncement controls." *Taylor*, 131 S.W.3d at 500 (citing

---

[4]"A fine is punitive in nature and is part of a defendant's sentence." *Anastassov v. State*, 664 S.W.3d 815, 820 (Tex. Crim. App. 2022). "A fine is not a court cost or fee; it is part of the punishment." *Id.* at 823.

*Thompson v. State*, 108 S.W.3d 287, 290 (Tex. Crim. App. 2003); *Ex parte Madding*, 70 S.W.3d at 135; *Coffey v. State*, 979 S.W.2d 326, 328 (Tex. Crim. App. 1998)). "The solution in those cases in which the oral pronouncement and the written judgment conflict is to reform the written judgment to conform to the sentence that was orally pronounced." *Thompson*, 108 S.W.3d at 290.

"[W]hen an accused receives deferred adjudication, no sentence is imposed. Then, when guilt is adjudicated, the order adjudicating guilt sets aside the order deferring adjudication, including the previously imposed fine." *Taylor*, 131 S.W.3d at 502. Consequently, when a trial court determines that it is time to put an end to deferred adjudication, any fine must be orally pronounced at the adjudication hearing. *See id.*; *Ramirez v. State*, No. 06-24-00003-CR, 2024 WL 2197229, at *1 (Tex. App.—Texarkana May 16, 2024, no pet.) (mem. op., not designated for publication); *Funk v. State*, Nos. 12-25-00003-CR & 12-25-00004-CR, 2025 WL 2985044, at *4–5 (Tex. App.—Tyler Oct. 22, 2025, no pet.) (mem. op., not designated for publication).

Here, a fine of $1,200.00 is found in the order placing King on deferred adjudication as well as in the judgment adjudicating guilt. The fine was part of the written plea agreement that brought about the order of deferred adjudication. The trial court accepted that plea agreement and orally pronounced the fine when placing King on deferred adjudication. But that pronouncement does not count when the trial court puts deferred adjudication to an end and proceeds to adjudication. *Taylor*, 131 S.W.3d at 502.

There was no oral pronouncement of the fine at King's revocation hearing. For this reason, we modify the trial court's judgment to delete the $1,200.00 "Fines," which appear in the

7

bill of costs as the $1,000.00 "Fine," along with the component parts of the additional $200.00.[5]

*See Thompson*, 108 S.W.3d at 290.

We sustain King's first issue.

## III.    The Attorney Fee Reimbursement Order

In his second issue, King urges that the evidence was insufficient to support the trial court's assessment of court-appointed attorney fees.  We affirm this portion of the trial court's judgment.

### A.    Attorney Fee Reimbursement Ordered in the Deferred Adjudication Order

We begin by narrowing the amount of the attorney fee reimbursement subject to dispute.

In 2014, the Texas Court of Criminal Appeals held, "A defendant must raise issues relating to the original plea proceeding, including evidentiary sufficiency, only in a timely appeal taken when deferred-adjudication community supervision is first imposed." *Perez v. State*, 424 S.W.3d 81, 86 (Tex. Crim. App. 2014).  That holding included

> [c]ourt costs of $203 were included in appellant's deferred-adjudication order, and appellant failed to appeal those costs at that time.  Accordingly, we sustain the [S]tate's ground 2, in part; we reverse the judgment of the court of appeals and dismiss appellant's appeal with respect to $203 of the $240 of court costs.

*Id.*  In *Perez*, the order of deferred adjudication community supervision resulted from a plea bargain.  *Id.* at 82.

This is true for attorney fee reimbursement orders as well:  "We agree with the State's position that we can conclude that Appellant had knowledge of the attorney fee and, therefore,

---

[5]Namely, the "Child Abuse Prevention Fine – 2020" of $100.00, the "Children's Advocacy Center Fine – 2020" of $50.00, and the "CRIME STOPPERS FEE – DC" of $50.00.

could have challenged the sufficiency of the evidence supporting payment of the fee in a direct appeal from the initial order for deferred adjudication." *Riles v. State*, 452 S.W.3d 333, 337 (Tex. Crim. App. 2015). Waiting until adjudication is too late: "Appellant filed no appeal until her community supervision was revoked two years later. We made clear in *Manuel* and *Wiley* that those issues that an appellant can raise in a direct appeal from the initial judgment must be raised, and that failing to do so results in procedural default." *Id.* at 338 (citing *Manuel v. State*, 994 S.W.2d 658, 661–62 (Tex. Crim. App. 1999); *Wiley v. State*, 410 S.W.3d 313, 320–21 (Tex. Crim. App. 2013)). In *Riles* the order of deferred adjudication community supervision was, as in *Perez*, the result of a plea bargain. *Id.* at 334. In a given case, there might be a question of whether the defendant knew the dollar figure of the costs or attorney's fees in time to appeal. *See id.* at 339 (Keller, P.J., concurring, joined by Hervey, J.) In *Riles*, though, "the fee did appear in the bill of costs in time for appellant to file a notice of appeal. Under th[o]se circumstances, [Presiding Judge Keller and Judge Hervey] agree[d] that appellant forfeited her claim under *Manuel v. State* by failing to raise it in an appeal from the judgment deferring adjudication." *Id.* (footnotes omitted) (citations omitted). Further, regarding incorporation, "the bill of costs listed the attorney's fee, and the judgment explicitly incorporated the bill of costs with its notation 'see attached.'" *Id.* "Although the bill of costs was not available at trial, appellant knew at trial (because of that notation) that the bill of costs was forthcoming and would be incorporated into the judgment." *Id.*; *see also id.* at 339 (Alcala, J., concurring) ("Like the majority opinion, I conclude that, by failing to appeal the trial court's order that she pay $1,000 in attorney's fees at the time when she was initially granted deferred adjudication, appellant

9

forfeited her right to later complain about those fees in an appeal from the trial court's judgment adjudicating guilt.").

In 2024, we applied *Riles* by stating, "As a condition of [defendant's] community supervision, the trial court ordered [defendant] to pay $1,266.50 in attorney fees. Because [defendant] did not object to that condition, [defendant] procedurally defaulted any challenge to the attorney fees imposed when being placed on deferred adjudication community supervision." *Bell v. State*, No. 06-24-00106-CR, 2024 WL 4879479, at *2 (Tex. App.—Texarkana, Nov. 25, 2024, pet. ref'd) (mem. op., not designated for publication) (citing *Riles*, 452 S.W.3d at 337).

Here, King's appointed counsel knew as of April 16, 2025, that he had incurred $1,300.00 in attorney fees representing King. On April 17, King was provided a bill of costs indicating that an attorney fee reimbursement could be included, and an attorney fee reimbursement in an amount "$TBD" was listed among the terms of deferred adjudication community supervision. Ultimately, the dollar amount of the reimbursement was included in the trial court's order placing King on deferred adjudication community supervision. Consequently, King cannot now contest the requirement that he reimburse $1,300.00 for the cost of appointed counsel through the deferred adjudication hearing. *See Riles* 452 S.W.3d at 338 ("Because of Appellant's knowledge of the issue of the attorney fee and her failure to appeal it from the original imposition of her deferred adjudication, she procedurally defaulted the issue and cannot now revive it.").

## B.    The Remaining Attorney Fee Reimbursement

We review a trial court's order calling for the reimbursement of attorney fees to determine whether there was a basis for the cost. *Teague*, 2026 WL 1052862, at *8 (citing *Johnson v. State*, 423 S.W.3d 385, 389 (Tex. Crim. App. 2014). "Code of Criminal Procedure Article 26.05(g) allows the trial court to order a defendant to re-pay costs of court-appointed legal counsel that the court finds the defendant is able to pay." *Cates v. State*, 402 S.W.3d 250, 251 (Tex. Crim. App. 2013). "[U]nder Article 26.05(g), 'the defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees.'" *Id.* (quoting *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010)). "However, a 'defendant who is determined by the court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial circumstances occurs.'" *Id.* (quoting TEX. CODE CRIM. PROC. ANN. art. 26.04(p)).

To the extent that King now appeals the additional $500.00 attorney fee assessed after the revocation hearing, he does so in the face of the trial court's finding of ability to pay at the deferred adjudication stage. The record reflects that the trial court's ability-to-pay finding was a part of the order of deferred adjudication. King has not directed us to, nor have we found in the record, any determination of indigency made between that finding and the November 3, 2025, hearing on the State's motion to revoke. Consequently, there was no applicable indigency finding when the State filed its application for adjudication of guilt in August 2025 and when the

11

trial court on November 3 assessed an additional $500.00 for legal services rendered for trial-level attorney work in this matter.[6]

Because King's challenge goes to services rendered after the trial court had made an unappealed and unmodified finding of ability-to-pay, King's arguments here fail.

We overrule King's second issue.

## IV.    The Time Payment Fee Was Prematurely Assessed and Must Be Deleted

In his third issue, King argues that the trial court erred in prematurely assessing a time payment fee.

The Texas Court of Criminal Appeals has concluded that a time payment fee like the one imposed here "must indeed be struck for being prematurely assessed because a defendant's appeal suspends the duty to pay court costs and therefore suspends the running of the clock for the purposes of the time payment fee." *Dulin v. State*, 620 S.W.3d 129, 129 (Tex. Crim. App. 2021). "[A]ssessment of the time payment fee in this case would be premature because appellate proceedings are still pending." *Id.*  Pursuant to *Dulin*, we delete the time payment fee "in [its] entirety, without prejudice to [it] being assessed later if, more than 30 days after the issuance of the appellate mandate, the defendant has failed to completely pay any fine, court costs, or restitution" owed. *Id.* at 133.

---

[6]We recognize that the trial court's docket sheet indicates that the trial court appointed counsel for appeal on November 3, 2025, but the complained-of attorney fee of $1,800.00 was assessed for work done prior to that time. At the revocation hearing, the trial court did not make an indigency finding, but instead stated, "You do have a right to appeal this case.  I can appoint an attorney."  The trial court stated that an appointment would be made if King "fill[ed] out an affidavit," but no affidavit appears in the record.

12

We sustain King's third issue and modify the judgment by deleting the "Reimbursement Fees" of $15.00 (which appears in the bill of costs as the "Time Payment Fee – 2020" of $15.00).

## V. Conclusion

We modify the trial court's judgment by deleting the "Fines" in the amount of $1,200.00 and the "Reimbursement Fees" of $15.00. As modified, we affirm the trial court's judgment.

Jeff Rambin
Justice

CONCURRENCE IN PART AND DISSENT IN PART

I respectfully dissent to section III(B) of the majority opinion regarding the award of attorney fees assessed during the revocation proceeding.

The record shows that, on December 23, 2024, the trial court appointed Todd Smith as counsel to represent King in this matter. Because counsel may be appointed only when indigency is shown, it is presumed that the trial court determined that King was indigent before appointing counsel. *See Schumann v. State*, No. 12-23-00068-CR, 2023 WL 8659249, at *2 (Tex. App.—Tyler Dec. 14, 2023, no pet.) (mem. op., not designated for publication) (citing TEX. CODE CRIM. PROC. ANN. art. 26.04(a); *Gray v. Robinson*, 744 S.W.2d 604, 607 (Tex. Crim. App. 1988) (orig. proceeding)). Smith represented King for the remainder of the trial court proceedings. As the majority opinion points out, in its order of deferred adjudication, the trial court made a finding of King's ability to pay $1,300.00 as court costs.

13

After the State filed its application for adjudication of guilt, the record reflects that Smith continued to represent King, and the trial court ordered that Smith be paid an additional $500.00 for his work as appointed counsel in the adjudication proceeding. In the judgment adjudicating guilt, the trial court assessed $1,800.00 in attorney fees but made no finding of King's ability to pay those fees.

Non-reversible error is found in the trial court's assessment of attorney fees during the revocation proceedings. The record shows that the trial court found King indigent before the revocation hearing and appointed counsel for him. "A defendant who is determined by the court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial circumstances occurs." TEX. CODE CRIM. PROC. ANN. art. 26.04(p) (Supp.). Attorney fees may only be assessed "as a reimbursement fee" "[i]f the judge determines that a defendant has financial resources that enable the defendant to offset in part or in whole the costs of the legal services provided." TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (Supp.). "[T]he defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees" of legal services provided. *Armstrong v. State*, 340 S.W.3d 759, 765–66 (Tex. Crim. App. 2011) (alteration in original) (quoting *Mayer*, 309 S.W.3d at 556); *Moody v. State*, No. 06-24-00122-CR, 2025 WL 470143, at *2 (Tex. App.—Texarkana Feb. 11, 2025, no pet.) (mem. op., not designated for publication) (quoting *Armstrong*, 340 S.W.3d at 765–66).

Here, there is no finding in the judgment of adjudication that King had the financial resources to pay the additional $500.00 in attorney fees assessed during the revocation

14

proceeding. Additionally, King testified at the revocation hearing that he did not have a job and had been looking for work since before the time of his arrest. Following the revocation hearing, the trial court appointed King counsel to represent him on appeal. The trial court also granted King's request for a free appellate record. As such, there is no factual basis to support the determination that King had the financial resources to pay an additional $500.00 in attorney fees for court-appointed counsel during revocation.

Because the appellate record fails to show some factual basis to support the determination that King had the ability to pay any attorney fees for court-appointed counsel during revocation, and because it is the proper remedy, I would modify the trial court's judgment and the bill of costs by deleting the assessment of the additional $500.00 in attorney fees. *See Schumann*, 2023 WL 8659249, at *6 (citing *Cates*, 402 S.W.3d at 252). For these reasons, I respectfully dissent.

Otherwise, I concur with the majority opinion. Consistent with the decision, I would further modify the bill of costs by deleting the $1,000.00 "Fine," the "Child Abuse Prevention Fine – 2020" of $100.00, the "Children's Advocacy Center Fine – 2020" of $50.00, the "CRIME STOPPERS FEE – DC" of $50.00, and the "Time Payment Fee – 2020" of $15.00.


Scott E. Stevens
Chief Justice


Date Submitted:     March 20, 2026
Date Decided:       June 24, 2026

Do Not Publish


15